**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CATHOLIC LEGAL IMMIGRATION
NETWORK, INC.,

      Plaintiff,

  v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

      Defendant.

Case No. 8:19-cv-01511-TJS

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

---

Robert K. Hur
United States Attorney
Alan C. Lazerow
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
(410) 209-4800
Alan.Lazerow@usdoj.gov

*Counsel for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CATHOLIC LEGAL IMMIGRATION NETWORK, INC.,

      Plaintiff,

  v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

      Defendant.

Case No. 8:19-cv-01511-TJS

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Defendant, the United States Citizenship and Immigration Services (the "Defendant" or the "Agency"), through its counsel, Robert K. Hur, United States Attorney for the District of Maryland, and Alan C. Lazerow, Assistant United States Attorney for that district, submits this *Memorandum of Law in Support of Motion for Summary Judgment* (the "Motion").

## I.    INTRODUCTION

By the *Complaint for Declaratory and Injunctive Relief, see* ECF No. 1 (the "Complaint"), Catholic Legal Immigration Network, Inc. (the "Plaintiff") asserts claims under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), related to FOIA requests Plaintiff submitted in May 2018. Although Defendant had not produced responsive documents when Plaintiff filed the Complaint, during this litigation, Defendant produced over 1,600 pages of responsive documents to Plaintiff, with only limited withholdings under FOIA Exemptions 5, 6, and 7(e). Thus, the issue now is not whether the Court should compel the Agency to respond to Plaintiff's FOIA requests, but whether the Agency's limited withholdings and redactions are legally correct. **More**

specifically, respective counsel for the parties have conferred and Plaintiff is not challenging any of the Exemption 6 withholdings or the adequacy of Defendant's search.

Summary judgment in Defendant's favor is appropriate. The attached Declaration of Jill A. Eggleston (the "Eggleston Declaration")[1] and the attached *Vaughn* index explain each redaction and withholding the Agency made and the basis for that redaction of withholding. Because the Agency satisfies its burden of proving that it properly invoked the pertinent FOIA exemptions, and because Plaintiff cannot show a material issue as for the Agency's good faith, Defendant is entitled to summary judgment, under Rule 56(a) of the Federal Rules of Civil Procedure (the "Rules").

## II.     FACTS AND ADMINISTRATIVE PROCEEDINGS

### A.     PLAINTIFF'S FOIA REQUESTS

Plaintiff made a FOIA request to USCIS dated May 18, 2018, concerning procedures followed in adjudicating Special Immigration Juvenile Status ("SIJS") petitions and SIJS-based adjustment of status applications. *See* Eggleston Declaration ¶ 12; Exh. A.[2] Specifically, Plaintiff sought:

1. A copy of the legal guidance issued by USCIS' Office of Chief Counsel in February 2018 regarding the agency's interpretation of the statutory reunification requirement for SIJS eligibility;

2. A copy of all other USCIS guidance, policies, memoranda, training materials, or other directives (including via e-mail correspondence) issued from December 2008 to the present regarding the adjudication of SIJS petitions in cases where the state "juvenile" court predicate order (required in all SIJS cases) is issued after the child's 18th birthday;

---

[1]     A copy of the Eggleston Declaration is attached as **Exhibit 1**.

[2]     References to lettered exhibits are references to the exhibits to the Eggleston Declaration.

3.      A copy of any document pertaining to research or information about specific state laws that USCIS has created or provided to assist adjudicators handling SIJS petitions, including but not limited to research or information pertaining to juvenile court jurisdiction and authority, issued from December 2008 to the present;

4.      A copy of all USCIS guidance, polices, memoranda, training materials, or other directives (including via e-mail correspondence) issued from December 2008 to the present regarding the adjudication of SIJS petitions; and

5.      A copy of all USCIS guidance, policies, memoranda, training materials, or other directives (including via e-email correspondence) issued from December 2008 to the present regarding the adjudication of SIJS-based adjustment of status applications (including regarding protocols for conducting interviews of SIJS petitioners or SIJS-based adjustment of status applicants).

*See* Eggleston Declaration ¶ 12; Exh. A (the "FOIA Request"), at pp. 2-3.

By letter dated May 22, 2018, USCIS confirmed receipt of the FOIA Request and granted a fee waiver.  Eggleston Declaration ¶ 13.  USCIS also indicated that it placed the FOIA Request in the "complex track."  *Id.*; Exh. B.  USCIS informed Plaintiff that it began a search for responsive records on May 21, 2018.  Eggleston Declaration ¶ 13; Exh. B.  In response to the FOIA Request, USCIS and its National Records Center ("NRC") personnel determined that based on the information being sought, any records in USCIS's control responsive to the FOIA Request and subject to the FOIA would most likely be maintained by the following USCIS offices:

-   The Office of Chief Counsel ("OCC"):  OCC is responsible for providing legal advice to senior leadership within USCIS on all aspects of immigration law, including issues related to SIJS.

-   The Office of Policy and Strategy ("OP&S").  OP&S is the principal policy advisor for the Director and USCIS, and also performs research and analysis on immigration issues and program evaluations.  In addition, OP&S leads and moderates the Senior Policy council, manages the USCIS Policy Manual, coordinates USCIS strategic goals and objectives, and oversees the regulatory development process to ensure compliance with the policy goals of USCIS, DHS and the Administration.

-   The Field Operations Directorate ("FOD").  FOD oversees and manages the day-to-day operations of the Western Region Office, Central Region Office, Northeast Region Office, Southeast Region Office, the National Benefits Center, the Immigrant Investor Program Office, 24, District Offices and eighty-eight Field Offices located throughout

the continental U.S., Alaska, Hawaii, Puerto Rico, Guam, Saipan, and the U.S. Virgin Islands.

Eggleston Declaration ¶ 14.  USCIS/NRC personnel determined that no other USCIS office was likely to maintain responsive documents.  *Id.*

Upon receipt of the FOIA Request, the NRC Significant Interest Group ("SIG") team forwarded the FOIA Request to each of the three offices and requested that staff in those offices search their records for any responsive documents.  *Id.* ¶ 15.  After receiving records from the assigned offices, the SIG team reviewed all documents to determine whether the search was reasonably calculated to locate records responsive to the FOIA Request.  *Id.* ¶ 16.  Based on the SIG team's review of the FOIA Request and its particular subject matter, along with the responsive records received, the Agency determined that it had identified all of the appropriate Directorates and program offices within USCIS, and each office had received all the information needed to perform a search that was reasonably calculated to locate any records responsive to the FOIA Request.  *Id.*  Additionally, after reviewing the responses from each office, the USCIS FOIA office determined that it believed staff within the offices searched all files that were reasonably likely to contain records responsive to the FOIA Request.  *Id.*  Based on the SIG team's review of this information, it determined that the search was adequate, and that it was unlikely that any of the other USCIS Directorates or program offices would have records responsive to the FOIA Request.  *Id.*

On January 25, 2019, USCIS signed its Final Action Letter and attempted to make its production of responsive records.  *Id.* ¶ 17.  Because of an internal issue with the Agency's FOIA processing system, however, the documents did not get delivered to Plaintiff.  *Id.*

- 4 -

### B.   THE COMPLAINT, THE DOCUMENT RELEASES, AND THE NARROWING OF ISSUES FOR SUMMARY JUDGMENT

On May 22, 2019, Plaintiff, having not received documents responsive to the FOIA Request, filed the Complaint.  *See* ECF No. 1.  In the Complaint, Plaintiff asked to the Court to: (i) declare that Defendant's failure to conduct a reasonable search for records violates FOIA; (ii) order Defendant to conduct a reasonable search for records; (iii) order Defendant to produce, by a date certain, all non-exempt records and a *Vaughn* index of any responsive records withheld under claim of exemption; (iv) enjoin Defendant from withholding responsive records and order Defendant to promptly produce them; (v) award Plaintiff fees and costs.  *See* Complaint, at p. 8.

On June 18, 2019, Defendant transmitted a release letter and responsive documents to Plaintiff.  Eggleston Declaration ¶ 19.  Defendant informed Plaintiff that it identified 1409 pages responsive to the FOIA Request, and that the Agency was releasing 824 pages in full, 453 pages in part, and that it was withholding in full 132 pages.  *Id.*  Defendant advised Plaintiff that the withheld material was exempted from disclosure under 5 U.S.C. §552(b)(5) and (6).  *Id.*; Exh. C.

After the June 18, 2019 release, Defendant learned that certain of the withheld material had been released in non-FOIA federal litigation.  Eggleston Declaration ¶ 20.  As a result, USCIS decided to reprocess the material consistent with these previous releases.  *Id.*  On September 23, 2019, Defendant transmitted another release letter and responsive documents to Plaintiff.  *Id.* ¶ 21; Exh. D.  Defendant informed Plaintiff that it had identified 1658 pages responsive to the FOIA Request, and that the Agency was releasing 1421 pages in full, 182 pages in part, and that it was withholding fifty-five pages in full.[3]  Eggleston Declaration ¶ 21; Exh. D, at p 2.  Defendant

---

[3]     Duplicate pages, which Defendant previously omitted from the initial release, were included in the reprocessed material.  As a result, the number of responsive pages increased by 260.  Eggleston Declaration ¶ 22.

advised Plaintiff that the withheld material was exempted from disclosure under 5 U.S.C. § 552(b)(5), (6) and (7)(E).  Eggleston Declaration ¶ 21; Exh. D, at p 2.

Following the September 23, 2019 release, Plaintiff's counsel raised certain issues concerning Defendant's search for specific documents.  Eggleston Declaration ¶ 23.  USCIS FOD conducted additional searches, locating responsive material that Defendant released by letter dated November 26, 2019.  *Id.*  Defendant released another 378 pages to Plaintiff via email.  *Id.*  Defendant released 364 pages in full and fourteen pages in part (with certain information redacted under 5 U.S.C. §552(b)(6)).  *Id.*

In preparing the Eggleston Declaration and the Motion, Defendant again reviewed its search for responsive records.  In consultation with USCIS FOD, Defendant located additional documents, and in the next few days, will be releasing (i) thirty-four previously-withheld pages in full, and (ii) two pages in full that Defendant originally withheld.  *Id.* ¶ 24.

## III.    STANDARD OF REVIEW:  SUMMARY JUDGMENT UNDER RULE 56(a)

Summary judgment is appropriate when "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,' based on the 'materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … , admissions, interrogatory answers, or other materials.'"  *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013) (quoting FED. R. CIV. P. 56(a), (c)).  An issue of fact is "genuine" only if the evidence is such that a reasonable factfinder could find for the non-moving party.  *See Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is "material" only if it could affect the outcome of the case under the general applicable standard.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The mere existence of some alleged factual dispute

in the case, however, will not defeat an otherwise properly supported summary judgment motion. *See id.* at 247-48.

Once the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to set forth specific facts, through affidavits or other evidence, that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e). The non-moving party "cannot create a genuine issue through mere speculation or the building of one inference upon another." *Id.* at 696-97 (quoting *Beale v. Hardy*, 769 F.2d 2213, 2214 (4th Cir. 1985)).

FOIA cases are generally resolved on summary judgment. *See* A*m. Mgmt. Servs. v. Dep't of the Army*, 703 F.3d 724, 735 (4th Cir. 2013); *Moore v. United States*, No. 1:13-cv-02353, 2014 WL 2575765, at *2 (D. Md. June 6, 2014). To prevail on a summary judgment motion, the agency must prove that it conducted an adequate search for responsive records and that each responsive record was either produced to the plaintiff or exempt from disclosure. *See Nicholas v. NSA*, No. 1:05-cv-02800, 2006 WL 4071922, at * 1 (D. Md. May 11, 2006); *see also Taitz v. Astrue*, 806 F. Supp. 2d 214, 217 (D.D.C. 2011).

To meet its burden, the Government may rely on reasonably detailed and nonconclusory affidavits or declarations. *Freeman v. DOJ*, 808 F.2d 834, 834 (4th Cir. 1986). To demonstrate the adequacy of a search, an agency may provide a reasonably detailed affidavit that sets forth the "type of search performed, and averring that all files likely to contain responsive materials … were searched." *Clay v. DOJ*, No. 1:09-cv-00179, 2010 WL 325587, at *3 (D.D.C. Jan. 29, 2010) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also In Def. of Animals v. NIH*, 543 F. Supp. 2d 83, 98 (D.D.C. 2008) ("To meet its burden, the agency may submit affidavits or declarations that explain both in reasonable detail and in a non-conclusory fashion the scope and method of the agency's search."). In considering the agency's submissions, the

Fourth Circuit has explained that "[i]t is imperative that the court consider and accord 'substantial weight to the expertise of the agencies charged with determining what information the government may properly release.'" *Bowers v. DOJ*, 930 F.2d 350, 357 (4th Cir. 1991) (quoting *Simmons v. DOJ*, 796 F.2d 709, 711 (4th Cir. 1986)); *see Havemann v. Astrue*, No. 1:10-cv-01498, 2012 WL 4378143, at *3 (D. Md. Sept. 24, 2012) (stating that such affidavits are "accorded a presumption of good faith"); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.").

If any agency has redacted information or withheld documents in response to a FOIA request, the agency must show that it properly invoked any FOIA exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). The agency can satisfy its burden through affidavits, declarations, a *Vaughn*[4] index, or other evidence showing that the information is exempt from disclosure. *See, e.g., Bowers*, 930 F.2d at 357 ("If the government fairly describes the content of the material withheld and adequately states its ground for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, a district court should uphold the government's position.") (quoting *Spannaus v. DOJ*, 813 F.2d 1285 (4th Cir. 1987)). "To prevail over this presumption a requestor must demonstrate a material issue by producing evidence,

---

[4]    *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). There is no set formula for a *Vaughn* index. "[I]t is well established that the critical elements of the *Vaughn* index lie in its function, and not in its form." *Kay v. FCC*, 976 F. Supp. 23, 35 (D.D.C. 1997). "A *Vaughn* index must (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemptions." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1326 n.1 (9th Cir. 1995). "Of course, the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

through affidavits or other appropriate means, … suggesting bad faith." *Havemann v. Colvin*, 629 F. App'x 537, 539 (4th Cir. 2015).

Defendant's declarant is Jill Eggleston, the Associate Center Director in the Freedom of Information and Privacy Act Unit, NRC, USCIS. Eggleston Declaration ¶ 1. In her role, Ms. Eggleston supervises over 200 information-access professionals responsible for the orderly processing of all public, congressional, judicial, and inter- and intra-agency requests or demands for access to USCIS records and information under the FOIA, Privacy Act, Executive Orders, departmental directives, regulations, and compulsory legal process. *Id.* ¶ 2. The Eggleston Declaration describes the details of Defendant's search for documents response to the FOIA Request and the justifications for withholding and redacting certain information. Defendant has also prepared a *Vaughn* index—prior versions of which Defendant shared with Plaintiff—the final version of which is attached as Exhibit E to the Eggleston Declaration. The *Vaughn* index includes, for each record, the start and end page, the number of pages per record, a description of each record, and a particularized explanation of the withheld information.

## IV.   **ARGUMENT**

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Casa de Md., Inc. v. U.S. Dep't of Homeland Sec.*, 409 F. App'x 697, 699 (4th Cir. 2011) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). Thus, under FOIA, when a person or entity makes a specific and reasonable request for records from a federal agency, the agency must make the responsive records available. *See* 5 U.S.C. § 552(a)(3)(A); *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 728 (4th Cir. 2013). Because public disclosure may not always be in the public interest, however, FOIA contains nine exemptions designed to

safeguard various public interests against the harms that would arise from overbroad disclosure. *See Am. Mgmt. Servs., LLC*, 703 F.3d at 728.  Although courts narrowly construe the nine FOIA exemptions, "even such narrow construction does not imply that disclosure is always called for." *Sung Bal Cho v. USDA*, No. 1:05-cv-01456, 2006 WL 8456574, at \*2 (D. Md. May 3, 2006).

Based on the record, Defendant contends that its actions in responding to the FOIA Request were fully justified and that, as a result, the Court should grant the Motion.  The Eggleston Declaration comprehensively articulates the search Defendant conducted for responsive records and the descriptions of and justifications for the information the Agency withheld under Exemptions 5, 6, and 7(E) of the FOIA, 5 U.S.C. § 552(b)(5), (6), and (7)(E).  **As Defendant explains above, respective counsel for the parties have conferred and Plaintiff is not challenging any of the Exemption 6 withholdings or the adequacy of Defendant's search.**

### A.    DEFENDANT PROPERLY ASSERTED FOIA EXEMPTION 5[5]

FOIA Exemption 5 protects from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency …." 5 U.S.C. § 552(b)(5).  "Among the privileges incorporated by FOIA Exemption 5 are the deliberative process privilege, the attorney work product privilege, and the attorney-client privilege."  *Judicial Watch, Inc. v. HUD*, 20 F. Supp. 3d 247, 256 (D.D.C. 2014) (internal quotation marks omitted); *see also Judicial Watch, Inc. v. U.S. Dep't of State*, 349 F. Supp. 3d 1, 6 (D.D.C. 2018) ("Exemption 5 unequivocally incorporates all civil discovery rules, including the attorney-client and deliberative process privileges.").  Defendant properly asserted the deliberative process privilege, attorney-client privilege, and work-product doctrine.

---

[5]    In correspondence, Plaintiff confirmed that it is not challenging Defendant's Exemption 5 withholdings on PDF Nos. 1285 and 1450-51.  *See Vaughn* Index, at pp. 37, 41.

i.    **Defendant Properly Asserted the Deliberative Process Privilege**

FOIA Exemption 5 incorporates the deliberative process privilege, which "encourages free-ranging discussion of alternatives; prevents public confusion that might result from the premature release of such nonbinding deliberations; and insulates against the chilling effect likely were officials to be judged not on the basis of their final decisions but for matters they considered before making up their minds." *City of Va. Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1252-53 (4th Cir. 1993). The deliberative process privilege protects materials that are both pre-decisional and deliberative. *Id.* at 1253. A "pre-decisional" document is one "prepared in order to assist an agency decision maker in arriving at his decision." *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994) (quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). The document is part of the "deliberative process" if "the disclosure of [the] materials would expose an agency's decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Commc'n's Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987); *City of Va. Beach*, 995 F.2d at 1253 (holding that a document is deliberative if it "reflects the give-and-take of the consultative process by revealing the manner in which the agency evaluates the possible alternative policies or outcomes"). The privilege thus protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *City of Va. Beach*, 995 F.2d at 1253. Even factual materials may be encompassed within the privilege. *See Nat'l Wildlife Fed. v. U.S. Forest Serv.*, 861 F.2d 1114, 1118 (9th Cir. 1988) (quoting *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974)).

For each document withheld (in full or part) based on the deliberative process privilege, the *Vaughn* index (i) identifies what type of document was being withheld (*e.g.*, slides, draft regulations, *etc.*); (ii) establishes that the document was "pre-decisional"; and (iii) establishes that the document was deliberative, in that it describes what deliberative process was involved, the role the documents at issue played in that process, and the decision-making authority of the Agency component at issue. *See* Eggleston Declaration ¶¶ 26-28; *Vaughn* Index, at *passim*. As a result, and as described more fully in the Eggleston Declaration and *Vaughn* Index, Defendant properly withheld documents under the deliberative process privilege, under Exemption 5.

### ii.    Defendant Properly Asserted the Attorney-Client Privilege

As the Fourth Circuit has explained:

> The attorney-client privilege is the oldest of the privileges for confidential information known to the common law. The Supreme Court has long recognized that the attorney-client privilege merits special protection to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. Thus, if a party demonstrates that attorney-client privilege applies, the privilege affords all communications between attorney and client absolute and complete protection from disclosure. This privilege protects not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.

*Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 291 (4th Cir. 2004) (internal citations and quotation marks omitted).

For each document withheld (in full or part) based on the attorney-client privilege, the *Vaughn* index identifies (i) what type of document was being withheld (*e.g.*, email thread, *etc.*); (ii) the parties to that communication (either by personal identity or Agency component); and (iii) the general subject matter of the communication. *See* Eggleston Declaration ¶¶ 31-32; *Vaughn* Index, at *passim*. Because that is all that is required, and as described more fully in the Eggleston

Declaration and *Vaughn* Index, Defendant properly withheld the documents under the attorney-client privilege, under Exemption 5.

### iii.    Defendant Properly Asserted the Attorney Work-Product Doctrine

"To be considered attorney work product, a document must have been 'prepared by an attorney in contemplation of litigation which set[s] forth the attorney's theory of the case and his litigation strategy.'" *Hanson*, 372 F.3d at 292 (quoting *NLRB v. Sears, Roebuck & Co.*), 421 U.S. 132, 154 (1975)). As one district court explained:

> In applying the work product doctrine, the D.C. Circuit has instructed that, it "should be interpreted broadly and held largely inviolate." *Judicial Watch v. U.S. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005). This is consistent with the policy underpinnings articulated by the Supreme Court that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S. Ct. 385, 91 L. Ed. 451 (1947). The work-product doctrine can apply to preparatory work performed not only by attorneys, but also, in some circumstances by nonlawyers, *United States v. Nobles*, 422 U.S. 225, 238-239, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975), and "does not distinguish between factual and deliberative material," *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987). This is because, in the context of work product, the risk is apparent that an attorney's discussion of factual matters may reveal his or her tactical or strategic thoughts. *See Mervin v. FTC*, 591 F.2d 821, 825-26 (D.C. Cir. 1978) (noting that "even the factual material segregated from attorney work-product is likely to reveal some of the attorney's tactical and strategic thoughts" and that while "pure statements of fact" are not exempt "from disclosure by calling them attorney work-product ... material which might disclose an attorney's appraisal of factual evidence is attorney work-product exempted from disclosure by exemption 5"). Thus, "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C .Cir. 1997).
>
> Moreover, in the FOIA context, the temporal relationship between the document at issue and the litigation for which the document was prepared is irrelevant. As the Supreme Court held in *Grolier*, 462 U.S. at 28, 103 S. Ct. 2209, "under Exemption 5, attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared. Only by construing Exemption 5 to provide a categorical rule can the Act's purpose of expediting disclosure by means of workable rules be furthered." As a consequence, work product materials may enjoy protection not only "when the litigation with

regard to which the work product was prepared is still in progress," *id.*, but also when that claim has been resolved. *Id.* at 29, 103 S. Ct. 2209.

Defendant withheld parts of only three pages of its entire production based on the attorney work-product doctrine. The emails comprising these three pages contain communications from a USCIS Office of Chief Counsel attorney in anticipation of litigation matters before USCIS relating to SIJS matters. *See* Eggleston Declaration ¶¶ 29-30; *Vaughn* Index, at pp. 42-43, 53-54. Because the emails were created in anticipation of litigation, and as described more fully in the Eggleston Declaration and *Vaughn* Index, Defendant properly withheld portions of the three pages under the attorney work-product doctrine, under Exemption 5.

## B. DEFENDANT PROPERLY ASSERTED FOIA EXEMPTION 7(E)

FOIA Exemption 7(E) protects from mandatory disclosure records compiled for law enforcement purposes if release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Courts have upheld the Government's use of this exemption where there are particular techniques or procedures in the documents and where it "goes beyond the legitimate public interest." *Putnam v. United States*, 873 F. Supp. 705, 717 (D.D.C. 1995). Essentially, Exemption 7(E) "protects law enforcement agencies from being required to provide information that might help criminals avoid apprehension." *Epps v. DOJ*, 801 F. Supp. 787, 795 (D.D.C. 1992), *aff'd in pertinent part and vacated in other part*, 995 F.2d 305 (D.C. Cir. 1993). As one court explained:

> Exemption 7(E) sets a relatively low bar for the agency to justify withholding: Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.

*Gluckman v. U.S. Dep't of Labor*, No. 3:13-cv-00169, 2013 WL 6184957, at \*5-6 (E.D. Va. Nov. 26, 2013) (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)).

Defendant withheld parts of only two pages of its entire production based on Exemption 7(E).  These two pages are part of Defendant's Consolidated Handbook of Adjudications Procedures (CHAP), and the portions of the withheld pages reveal the types of items Defendant considers in evaluating fraud indicators, the disclosure of which would reveal methods and techniques for enforcing immigration and national security laws and directives.  *See* Eggleston Declaration ¶¶ 35-36; *Vaughn* Index, at p. 3.  Disclosure of the withheld portions of these two pages could reasonably be expected to risk the circumvention of law.  *See* Eggleston Declaration ¶ 36; *Vaughn* Index, at p. 3.  As a result, and as described more fully in the Eggleston Declaration and *Vaughn* Index, Defendant properly withheld portions of the two pages at issue under Exemption 7(E).  *See, e.g.*, *Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 79 (D.D.C. 2012) (holding that USCIS documents listing fraud indicators that USCIS site inspectors use in evaluating fraudulent visa application fell within Exemption 7(E)).

## V.   <u>CONCLUSION</u>

Defendant is entitled to summary judgment.  Defendant set forth, with reasonably specific detail, its justifications for its nondisclosure of certain information and has established that the withheld information falls within the claimed FOIA exemptions, which Defendant acted in good faith in claiming.  No genuine issue of material fact exists, and the Court should award Defendant summary judgment.

Respectfully submitted,

Robert K. Hur
United States Attorney

By: _____/s/_____
Alan C. Lazerow (Bar No. 29756)
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
(410) 209-4800
Alan.Lazerow@usdoj.gov

*Counsel for Defendant*