# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| **CATHOLIC LEGAL IMMIGRATION NETWORK, INC.** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CASE NUMBER: 8:19-CV-01511-TJS** |
| **v.** ) | |
| ) | |
| **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

This litigation has already yielded one result—forcing Defendant to respond to a request they had ignored for over a year. But, despite multiple productions, Defendant continues to inappropriately withhold critical information that Plaintiff needs in order to gain a meaningful understanding of the current policies and practices followed by Defendant. Congress enacted the Freedom of Information Act ("FOIA") "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Lab. Rel. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The Act, commonly called "FOIA" and codified at 5 U.S.C. § 552 *et seq.*, provides a framework by which the public may exercise its right to access government records, while authorizing federal agencies to protect certain categories of sensitive information.

FOIA is a critical tool for organizations such as the Plaintiff, the Catholic Legal Immigration Network, Inc. ("CLINIC"), whose mission includes advocacy for fair

administration of the law and effective representation of noncitizens in immigration proceedings, including the adjudication of Special Immigrant Juvenile Status ("SIJS") petitions (Form I-360) and SIJS-based adjustments of status applications.  Compl. ¶¶ 1-2.  CLINIC seeks information regarding recent changes in United States Citizenship and Immigration Services ("USCIS") adjudication procedure and policy, including a spike in the revocation of approved SIJS petitions and the denial of newly filed petitions.  Compl. ¶ 5.  CLINIC will use the data to educate the public on government operations and activities related to adjudication of SIJS petitions and SIJS-based adjustment of status applications filed by abused, neglected, and/or abandoned children.  Def. Ex. A at 3.  Specifically, the requested information will contribute to CLINIC's public education materials on the immigration system, and will assist CLINIC in providing technical assistance to nonprofit legal services providers and pro bono attorneys who represent children seeking SIJS protections.  Def. Ex. A at 4.

Following CLINIC's initiation of this action, Defendant finally responded to its Request and produced some records, but failed to produce other records and improperly withheld information claimed to be exempt from FOIA.  The parties have since narrowed the issues in dispute to Defendant's withholding of certain responsive information from the disclosed records.  Specifically, CLINIC is challenging Defendant's assertion of the deliberative process, attorney-client privilege, attorney work product, and law-enforcement exemptions under FOIA.  CLINIC also challenges Defendant's facially inadequate *Vaughn* index descriptions in regards to the records withheld and the application of both the attorney-client privilege and attorney work product doctrine.

Because Defendant's claimed exemptions fail to meet the necessary standards under FOIA, Defendant has not met its burden under Fed. R. Civ. P. 56(a) and its motion should be denied.

## FACTUAL BACKGROUND

This suit arises from CLINIC's effort to obtain records from the United States Citizenship and Immigration Services ("USCIS" or "Defendant") concerning the procedures USCIS follows in adjudicating SIJS petitions and SIJS-based adjustments of status applications. Compl. ¶ 1.  The SIJS classification provides certain children who have been subject to state juvenile court proceedings related to parental abuse, neglect, abandonment, or a similar basis under state law the ability to seek lawful permanent residence in the United States.  Compl. ¶ 3. CLINIC offers training and technical assistance to nonprofit practitioners across the country to help them effectively represent noncitizens in immigration proceedings, including SIJS-eligible children.  Compl. ¶ 2.

In 2008, Congress enacted significant amendments to the SIJS provisions found in the Immigration and Nationality Act through the William Wilberforce Trafficking Victims Protection Reauthorization Act, Public Law 110-457, and in the fall of 2016, USCIS published provisions in its Policy Manual interpreting the SIJS statute.  Compl. ¶ 4.  Around the same time, USCIS altered the process for SIJS adjudications by shifting from a field office-based system to a centralized system, under which SIJS petitions are adjudicated at the National Benefits Center in Lee's Summit, Missouri and recently has implemented additional changes in USCIS practice in adjudicating SIJS petitions.  Compl. ¶ 5.  As a result, USCIS began revoking previously approved Form I-360 SIJS Petitions and approvals for SIJS petitions dropped by nearly sixty percent in the fiscal year 2018 as opposed to 2017 while denials increased more than seventy-seven percent.  Compl. ¶ 5.

In response to these alarming statistics and in an effort to clarify the current policies and practices followed by USCIS in its adjudication of SIJS petitions and SIJS-based adjustment applications, CLINIC submitted a FOIA Request (the "Request") to USCIS on May 18, 2018. Compl. ¶¶ 6-7; *see* Def. Ex. A.  In this request, CLINIC sought:

1.    A copy of the legal guidance issued by USCIS's Office of Chief Counsel in February 2018 regarding the agency's interpretation of the statutory reunification requirement for SIJS eligibility.

2.    A copy of all other USCIS guidance, policies, memoranda, training materials, or other directives (including via e-mail correspondence) issued from December 2008 to the present regarding the adjudication of SIJS petitions in cases where the state "juvenile" court predicate order (required in all SIJS cases) is issued after the child's 18th birthday.

3.    A copy of any document pertaining to research or information about specific state laws that USCIS has created or provided to assist adjudicators handling SIJS petitions, including but not limited to research or information pertaining to juvenile court jurisdiction and authority, issued from December 2008 to the present.

4.    A copy of all USCIS guidance, policies, memoranda, training materials, or other directives (including via e-mail correspondence) issued from December 2008 to the present regarding the adjudication of SIJS petitions.

5.    A copy of all USCIS guidance, policies, memoranda, training materials, or other directives (including via e-mail correspondence) issued from December 2008 to the present regarding the adjudication of SIJS-based adjustment of status applications (including regarding protocols for conducting interviews of SIJS petitioners or SIJS-based adjustment of status applicants).

Def. Ex. A at 2-3.  Despite USCIS's May 21, 2018 letter confirming its receipt of the Request and indicating that it had begun searching for responsive records, USCIS failed to produce records or information and failed to provide any substantive response to the Request within the applicable statutory period set forth in 5 U.S.C. § 552(a)(6)(A).  Compl. ¶¶ 18-28. Consequently, in May 2019, CLINIC filed this lawsuit to force Defendant to respond to its Request, as required by law.  It was not until commencement of this lawsuit that Defendant

responded, producing limited responsive material, but withholding in full or in part nearly half of the documents it had identified as responsive to the Request. *See* Def. Br. at 5.

Following the initial production, Defendant produced certain supplemental materials. In addition, the parties met and conferred on several occasions, resulting in the production by Defendant of certain additional records as well as CLINIC's narrowing of its Request. Defendant has asserted FOIA exemptions pursuant to 5 U.S.C. Section 552(b)(5), (6), and 7(E). As noted in Defendant's Exhibit E (the *Vaughn* Index), Plaintiff does not challenge certain of the exemptions, including any of the exemptions pursuant to Section 552(b)(6). Accordingly, at issue in this motion are fifty-three pages that Defendant withheld in full and one hundred and ninety-six pages that Defendant withheld in part. Because Defendant's claimed exemptions fail to meet the applicable standards under FOIA, Defendant has not met its burden under Fed. R. Civ. P. 56(a) and its motion must be denied and the documents disclosed.

## ARGUMENT

## I.    FREEDOM OF INFORMATION ACT

FOIA requires federal agencies to release all records that are responsive to a proper request unless a statutory exemption protects the records from disclosure. *See* 5 U.S.C. § 552(a), (b). When sued for failure to respond appropriately to a FOIA records request, the agency bears the burden of proving that it has fulfilled its FOIA obligations. *Ethyl Corp. v. United States EPA*, 25 F.3d 1241, 1245 (4th Cir. 1994).

"[FOIA] was enacted to maintain an open government and to ensure the existence of an informed citizenry 'to check against corruption and to hold the governors accountable to the governed.'" *Ethyl Corp.*, 25 F.3d at 1245 (quoting *Robbins Tire*, 437 U.S. at 242). To that end, FOIA "is to be construed broadly to provide information to the public in accordance with its

purposes." *Ethyl Corp.*, 25 F.3d at 1245. "FOIA exemptions are, however, narrowly construed to favor the Act's presumption of disclosure." *Rein v. United States PTO*, 553 F.3d 353, 365 n.17 (4th Cir. 2009).

"The United States District Courts are given jurisdiction to enjoin the Agencies from 'withholding Agency records and to order the production of Agency records improperly withheld.'" *Ethyl Corp.*, 25 F.3d at 1245-46 (quoting 5 U.S.C. § 552(a)(4)(B)).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when, and only when, no genuine dispute of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue of fact is genuine if a reasonable factfinder could find for the non-moving party based on the evidence. *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 283 (4th Cir. 2004). In general, "FOIA determinations should be resolved on summary judgment." *Hanson v. United States Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004).

Under FOIA, "[t]he burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not agency records or have not been improperly withheld" pursuant to FOIA's nine enumerated exemptions. *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989) (quotations omitted). Accordingly, a FOIA plaintiff is entitled to summary judgment where the agency fails to justify its withholdings. *Id.* at 151; *see* 5 U.S.C. § 552(a)(4)(B). The Court is empowered to "order the production of any agency records improperly withheld," and "may examine the contents of such agency records in camera to determine whether such records

or any part thereof shall be withheld under any of the exemptions" set forth in the statute.  5

U.S.C. § 552(a)(4)(B).

To support its withholding decisions, the agency must make an affirmative showing that

the withheld documents satisfy one of the exemptions.  *Hanson v. United States Agency for Int'l*

*Dev.*, 372 F.3d 286, 290 (4th Cir. 2004).  To do this, an agency may produce a *Vaughn* index or

other evidence showing the information falls within a FOIA exemption.  *See Ethyl Corp.*, 25

F.3d 1249-50; *Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973).[1]

Regardless of how the agency tries to make its affirmative showing, the agency always

"bear[s] the burden of providing sufficient factual information as to the document's nature or

content from which the district court can independently assess the applicability of the claimed

exemption." *Id.* at 370.

Because "the agency alone possesses knowledge of the precise content of documents

withheld, the FOIA requester and the court both must rely upon its representations for an

understanding of the material sought to be protected."  *King v. U.S. Dep't of Justice*, 830 F.2d

210, 218 (D.C. Cir. 1987).  "Affidavits submitted by a governmental agency in justification for

its exemption claims must therefore strive to correct, however, imperfectly, the asymmetrical

distribution of knowledge that characterizes FOIA litigation." *Id.*  Summary judgment may be

granted on the basis of an agency declaration only if it is relatively detailed, nonconclusory, and

made in good faith.  *Simmons v. United States Dep't of Justice*, 796 F.2d 709, 712 (4th Cir.

1986).

---

[1] "A *Vaughn* index is a list describing the documents an agency withholds.  The list must include
sufficiently detailed information to enable a district court to rule whether the document falls
within a FOIA exemption."  *Rein v. United States PTO*, 553 F.3d 353, 357 n.6 (4th Cir. 2009).

### III.    DEFENDANT UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES HAS IMPROPERLY WITHHELD RECORDS

Defendants have withheld many responsive documents in full and in part, citing FOIA Exemptions 5 and 7(E).  But Defendant's *Vaughn* index is too vague and conclusory for this Court to even determine whether it properly invoked FOIA Exemptions 5 and 7(E).  Moreover, to the extent the *Vaughn* index does describe the withheld or redacted information, Defendant's *Vaughn* index descriptions show that is misapplied Exemptions 5 and 7(E) and unlawfully withheld information.

Additionally, and importantly, the FOIA analysis does not end with a determination of whether documents fall within an exemption.  Rather, "the statute requires that 'any reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt . . . .'"  *City of Va. Beach*, 995 F.2d at 1253 (quoting 5 U.S.C. § 552(b)).  "The focus of the FOIA is information, not documents."  *Id.* (quoting *Mead Data Central, Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).

#### A.    Defendant Improperly Withheld Information Under FOIA Exemption 5

Exemption 5 allows a federal agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency," which includes the deliberative process and attorney-client privileges and attorney work product doctrine. 5 U.S.C. § 552(b)(5); *Rein*, 553 F.3d at 365-66.  The agency cannot satisfy its burden by "'articulat[ing] the Exemption 5 privilege in general terms, using FOIA language, and coupl[ing] the statement of privilege for each document with a general description of each document.'"  *Rein*, 553 F.3d at 368 (quoting *Ethyl Corp.*, 25 F.3d at 1249). Notably, in cases where "an index is so vague as to leave the district court with an inability to

8

rule, then some other means of review must be undertaken, such as *in camera* review." *Ethyl Corp.*, 25 F.3d at 1250.

Defendant failed to meet its burden to prove that the information it withheld falls within Exemption 5 because Defendant's *Vaughn* index is facially inadequate, and it misapplied the deliberative process privilege, attorney-client privilege, and work-product doctrine.

### 1. Defendant's *Vaughn* Index Does Not Adequately Describe the Withheld Records

The agency "bear[s] the burden of providing sufficient factual information as to the document's nature or content from which the district court can independently assess the applicability of the claimed exemption." *Rein*, 553 F.3d at 370.

A *Vaughn* index must describe withheld information with "reasonable specificity." *Id.* at 366 (quoting *Ethyl Corp.*, 25 F.3d at 1249-50). "When examining the adequacy of a *Vaughn* index entry, the focal point is whether it contains an adequate factual basis to support the claimed exemption." *Id.* at 370. Defendant's *Vaughn* index failed to provide adequate factual bases to support its claimed exemptions as a matter of law because it failed to include the authors, recipients, and dates for several documents, and because it is replete with vague descriptions of the withheld or redacted information.

### (a) Defendant's *Vaughn* Index Is Inadequate Because It Fails to Include Authors, Recipients, and Dates

The Fourth Circuit's decision in *Rein* explained that *Vaughn* index entries must contain information about the author and recipient and generally must contain a date. *See Rein*, 553 F.3d at 365-71. "*Vaughn* index documents that fail to include information about their author and recipient, or which fail to provide an explanation that adequately substitutes for this information, *do not contain adequate information* for the district court to have determined whether they were properly withheld." *Id.* at 366 (emphasis added). Indeed, when an agency fails to identify the

author or recipient, it is "difficult, if not impossible," to determine whether the withheld information was properly withheld. *Id.* at 367 (quoting *Ethyl Corp.*, 25 F.3d at 1250).

Although failing to include a date does not automatically render a *Vaughn* index entry inadequate, the date is a "critical factor" in many situations. *Rein*, 553 F.3d at 366 n.21. Therefore, the date, or at least some other indication of chronology, must be included in a *Vaughn* index entry, or else it is inadequate as a matter of law. *Id.*

Defendant failed to identify the author or recipient of several documents it withheld. *See, e.g.*, Def. Ex. E at 11 (PDFs 724-28). Similarly, Defendant failed to identify the dates for many of the documents it withheld. *See, e.g.*, Def. Ex. E at 9-10, 21-22, 29, 33-35 (PDFs 697-708, 724-28, 755-59, 834-35, 973-83, 1184-95). Therefore, it is "difficult, if not impossible," for this Court to determine whether Defendant has properly invoked the FOIA exemptions associated with these inadequate entries. *See Rein*, 553 F.3d at 367.

Furthermore, there are some documents that Defendant withheld in full and provided *zero* explanation in its *Vaughn* index as to why it withheld them. *See, e.g.*, Def. Ex. E at 37 (PDFs 1286-87). Defendant's document production claims these documents were withheld under Exemption 5, but its *Vaughn* index merely states these pages were "RIF," meaning "released in full." Clearly, these withheld-in-full documents were not released in full, so Defendant failed to adequately describe these withheld documents.

        **(b)**      **Defendant's *Vaughn* Index Fails to Adequately Describe Withheld Information**

Even if a *Vaughn* index entry reflects the author, recipient, and date, the entry remains inadequate as a matter of law if it fails to adequately describe the withheld information. To be considered adequate, a *Vaughn* index entry must contain a "detailed justification." *Rein*, 553 F.3d at 368 (quoting *Ethyl Corp.*, 25 F.3d at 1250). *Vaughn* index descriptions are inadequate

when they "articulate the Exemption 5 privilege in general terms, using FOIA language, and couple the statement of privilege for each document with a general description of the document." *Id.* (quoting *Ethyl Corp.*, 25 F.3d at 1249). Similarly, a *Vaughn* index entry that reflects the author, recipient, date, and "a brief description of the memorandum such as 'Advice on audit of reseller whether product costs can include imported freight charges, discounts, or rental fees. Sections 212.93 and 212.92" is "patently inadequate to permit a court to decide whether the exemption was properly claimed." *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980)).

Defendant's *Vaughn* index is replete with inadequate descriptions. *See generally* Def. Ex. E. The *Vaughn* index description for PDF 321 provides an illustrative example. *See* Def. Ex. E at 4 (PDF 321). Among the parroting of general FOIA language in this description, the only actual description Defendant provided of what it withheld was that the record "discuss[ed] guidance regarding techniques to be used in interviewing children in SIJ cases." *Id.* It does not specify how the document is predecisional nor does it specify how the document is deliberative. This type of general description is far from the "detailed justification" that *Rein* requires *Vaughn* index entries to contain. Similarly, Defendant's Declaration provides no explanation as to why Exemption 5 properly applies to the information it withheld; it is conclusory and insufficiently detailed. *See* Eggleston Decl. ¶¶ 27-28. Therefore, it cannot support awarding summary judgment to Defendant. *See Simmons*, 796 F.2d at 712.

Defendant's *Vaughn* index even appears to mischaracterize what it withheld at times. *See, e.g.*, Def. Ex. E at 25 (PDFs 807-08). For example, PDFs 807-08 appear to be an email thread discussing Politico and New York Times articles. But defendant redacted several paragraphs from this email thread on deliberative process privilege grounds, claiming that these

paragraphs were predecisional and deliberative. There is nothing on the face of the non-redacted

portions of the email thread to indicate that it contains predecisional and deliberative

communications, and the *Vaughn* index makes no attempt to clarify what is predecisional and

deliberative about the redacted paragraphs. Therefore, at best, Defendant failed to adequately

describe these redactions, or at worst, Defendant mischaracterized what it redacted.

As such, Defendant failed to "provid[e] sufficient factual information" as to the

information it withheld "from which the district court can independently assess the applicability

of the claimed exemption." *Rein*, 553 F.3d at 370. Accordingly, Defendant's motion should be

denied.

### (c)    Defendant's Withholding Based on the Attorney-Client Privilege is Without Basis

Defendant's withholdings pursuant to the attorney-client privilege are similarly improper

in that Defendant's *Vaughn* index and brief provide no justification other than conclusory

recitations of the elements of privilege. Because it "impedes the full and free discovery of the

truth, the attorney-client privilege 'is to be narrowly construed' and 'recognized only to the very

limited extent that . . . excluding relevant evidence has a public good transcending the normally

predominant principle of utilizing all rational means for ascertaining truth.'" *In re Grand Jury*

*Subpoena*, 204 F.3d 516, 519 (4th Cir. 2000) (quoting *Hawkins v. Stables*, 148 F.3d 379, 383

(4th Cir. 1998)). The proponent of the attorney-client privilege bears the burden of

demonstrating its applicability. *Rein*, 553 F.3d at 370 (internal quotations and citations omitted).

To satisfy this burden in the context of FOIA, the withholding of documents on the basis of

attorney-client privilege must be supported by a *Vaughn* index that "contain[s] enough facts for

the district court to determine that the document contains confidential communication between a

government lawyer and a government entity (the client), in the context of securing a legal

12

opinion, legal services[,] or assistance in legal proceedings, and that the privilege has not been waived." *Id.*  Defendant has failed to meet its burden.

Defendant's arguments as to the applicability of attorney-client privilege prove as conclusory as its *Vaughn* index descriptions.  Defendant contends that it has identified "(i) what type of document was being withheld (*e.g.*, email thread, etc.); (ii) the parties to that communication (either by personal identity or Agency component); and (iii) the general subject matter of the communication" and, without citation to any authority, claims "that is all that is required."  Def's. Br. at 12.  This is not so.  Defendant's bare recitation of the elements of privilege, both in its brief and *Vaughn* index, presupposes its applicability and are exactly the type of "conclusory assertions of privilege [that] will not suffice to carry the Government's burden of proof in defending FOIA cases."  *Rein*, 553 F.3d at 368 (quoting *Coastal States*, 617 F.2d at 861).

Here, Defendant's *Vaughn* index fails to provide enough facts to establish whether the substance of these communications is truly privileged.[2]  Specifically, there are a number of relevant privilege exclusions that Defendant fails to address.  Excluded from the attorney-client privilege are communications that do not contain confidential information *concerning the agency.  See Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983) (emphasis in original). Where a third party outsider seeks a ruling from an agency official, the outsider's communication does not contain any confidential information concerning the agency.  *See id.* at 245.  Thus, when the agency official transmits the relevant facts to counsel, no new or confidential information concerning the agency is imparted.  *Id.*  Defendant has withheld

---

[2] Currently withheld in full or redacted in part pursuant to attorney-client privilege are seventy pages worth of records.  *See* Def's. Ex. E at PDFs 688-96, 729-33, 735-36, 744-45, 750, 791-94, 817-19, 821-29, 832-33, 849-52, 1196, 1203-04, 1429-30, 1579-1603, 1627.

documents that purportedly "contain[] confidential information provided to and from the OCC for the purpose of legal advice regarding specific SIJ petitions in state court."  *See, e.g.*, Def. Ex. E at 43-47, 50-52 (PDFs 1581-87, 1593-98).  To the extent that these communications reflect specific inquiries from third parties subject to those specific SIJ petitions, no confidential information *concerning the agency* is implicated and attorney-client privilege does not apply.

Furthermore, FOIA Exemption 5 and the attorney-client privilege may not be used to protect a growing body of agency law from disclosure to the public.  *See Tax Analysts v. IRS*, 117 F.3d 607, 619 (D.C. Cir. 1997).  Insofar as any of the withheld documents do not counsel in a manner intended to assist the agency in protecting its interests but rather provide neutral, objective analyses of agency regulations or guidance, they are not protected by attorney-client privilege.  *See Coastal States*, 617 F.2d at 863.  These sorts of documents "resemble, in fact, question and answer guidelines which might be found in an agency manual."  *Id.*  Notably, a number of responsive documents withheld pursuant to attorney-client privilege are agency FAQs, the very type of "question and answer guidelines" arguably not protected by the privilege. *See, e.g.*, Def. Ex. E at 8, 13, 26-28.  Defendant's *Vaughn* index does not provide enough facts such that the Court—or CLINIC for that matter—can determine whether these documents are protected by the attorney-client privilege.

Defendant's claimed exemptions fail to meet the applicable standards under FOIA, and it has not met its burden under Fed. R. Civ. P. 56(a).  Even if Defendant had provided more than conclusory assertions of attorney-client privilege—it has not—the narrow construction of the exception to a FOIA request counsels against its application and the records should be disclosed.

(d)    **Defendant Fails to Properly Assert the Attorney Work Product Doctrine**

For reasons similar to those stated above, Defendant fails to establish that documents are properly withheld pursuant to the attorney work product doctrine.  In order "[t]o be considered attorney work product, a document must have been 'prepared by an attorney in contemplation of litigation which sets forth the attorney's theory of his case and his litigation strategy.'" *Hanson*, 372 F.3d at 292-93 (4th Cir. 2004) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 132).  To be sure, "'[t]he document must . . . [have been] prepared *because of* the prospect of litigation;' and 'materials prepared in the ordinary course of business . . . or for other non-litigation purposes' are not protected." *Hennessey v. United States Agency for Int'l Dev.*, No. 97-1133, 1997 U.S. App. LEXIS 22975, at *16 (4th Cir. 1997) (quoting *National Union Fire Ins. v. Murray Sheet Metal*, 967 F.2d 980, 984 (4th Cir. 1992) (emphasis in original)).

Again, Defendant makes no more than bare assertions that withheld documents "contain confidential information provided to the OCC from its clients for the purpose of legal advice" and "contains communications to OCC attorneys in anticipation of litigation matters before USCIS" including communications "regarding legal standards in adjudicating SIJ petitions." *See* Def. Ex. E. at 42, 54 (PDFs 1579-80, 1603).  An agency's "statements in its *Vaughn* index cannot support summary judgment if they are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 109 (D.D.C. 2009) (internal citation and quotation omitted).  USCIS's *Vaughn* index does just that—it merely asserts, without more, that the withheld documents were prepared in anticipation of litigation.  These descriptions fail to address that these documents may have been prepared for non-litigation purposes and therefore render them not privileged.  Simply averring that documents are attorney work product does not make them so.  In the absence of a

15

description or analysis that goes beyond conclusory statements, Defendant has failed to justify its withholdings and its motion should be denied. *Tax Analysts*, 492 U.S. at 151; 5 U.S.C. § 552(a)(4)(B).

> **2.    To the Extent Defendant Did Describe What It Withheld, the *Vaughn* Index Shows that Defendant Improperly Withheld Information Under the Deliberative Process Privilege**

For Exemption 5's deliberative process privilege to apply, the agency must prove that the record is both "predecisional" and "deliberative." *City of Va. Beach*, 995 F.2d at 1253; *Rein*, 553 F.3d at 370. "Predecisional documents are 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" *City of Va. Beach*, 995 F.2d at 1253 (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)); *see Petroleum Info. Corp. v. U.S. Dept. of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) ("A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made.") (Ginsburg, Ruth Bader, J.) (citation omitted). "Deliberative material reflects the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *Id.* (internal quotations and citations omitted). "Mere classification of a document as a 'draft document' does not end the inquiry; the government must also prove that the document is pre-decisional and related to a deliberative process." *Worsham v. United States Dep't of the Treasury*, Civil Action No. ELH-12-2635, 2013 U.S. Dist. LEXIS 132644, at *38 (D. Md. Sep. 17, 2013) (quoting *Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 27 (D.D.C. 2011)).

> **(a)    Defendant Improperly Withheld Records that Merely Discuss How to Present Policy Already Decided On**

The Supreme Court has long held that the disclosure of communications with respect to an agency decision occurring after the decision has been made does not hinder the agency's

16

decisionmaking process. *Sears, Roebuck & Co.*, 421 U.S. at 151. As such, the Court has recognized that "communications made after the decision and designed to explain it" are *not* subject to the deliberative process privilege. *Id.* at 152. As one district court explained, "[d]eliberations about how to present an already decided policy to the public, or documents designed to explain that policy to . . . the public, *including in draft form*, are at the heart of what should be released under FOIA." *Nat'l Day Laborer Organizing Network v. ICE*, 811 F. Supp. 2d 713, 741 (S.D.N.Y. 2011) (emphasis added).

Defendant has improperly withheld many post-decisional communications that are at the heart of what FOIA mandates Defendant to release. For example, Defendant withheld in full or redacted in part communications regarding a "communication plan" that, based on the *Vaughn* index descriptions, appear to discuss how Defendant planned to explain SIJ policy to the public. *See* Def. Ex. E at 15-19 (PDFs 738-43). Correspondence about creating a "communication plan" to explain already decided policy is exactly the kind of post-decisional information that Defendant cannot properly withhold under Exemption 5. *See Sears, Roebuck & Co.*, 421 U.S. at 152. As such, the Court must order these communications released.

Similarly, Defendant improperly withheld many records involving a "FAQ." *See, e.g.*, Def. Ex. E at 8-10, 13, 26-27, 33, 34-35 (PDFs 688-96, 697, 698-708, 731, 817-19, 821-29, 973-83, 1184-95). As a preliminary matter, Defendant's *Vaughn* index does not make clear who the audience of the FAQ is (*e.g.*, the public, agency employees, etc.) and whether these entries refer to the same FAQ or different FAQs. However, if the FAQ is for the public, the District of Maryland has recognized that FAQ-like documents aimed at the public tend to present an agency's established policy, so they may not fall under the deliberative process privilege, or at least should be subject to *in camera* review. *See Worsham*, 2013 U.S. Dist. LEXIS 132644, at

17

*45-47 (rejecting the agency's argument that an FAQ-like document is a policy document and requiring the agency to produce the documents to the court for *in camera* inspection).  And although the agency produced a document entitled "SIJ-FAQ," FOIA requires the agency to produce any drafts of the FAQ because documents intended to explain policy to the public, "including in draft form, are at the heart of what should be released under FOIA."  *Nat'l Day Laborer Organizing Network*, 811 F. Supp. 2d at 741.

If the FAQ is for agency employees, it would constitute the agency's "working law," and thus must be disclosed.  *Sears, Roebuck & Co.*, 421 U.S. at 153.  Working law "in practice represent[s] interpretations of established policy on which the agency relies in discharging its regulatory responsibilities."  *Coastal States*, 617 F.2d at 869.  FOIA requires agencies to disclose working law because agencies are not "permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'"  *Id.* at 867.  Agency FAQs would logically seem to include "interpretations of established policy," but Defendant's *Vaughn* index descriptions referencing the FAQ give no indication of the sort of information Defendant actually withheld, so the Court must order Defendant to disclose this information or at least conduct an *in camera* review.  Therefore, Defendant must produce these records, *even if they are "in draft form,"* or the Court should at least conduct an *in camera* inspection.  *See Nat'l Day Laborer Organizing Network*, 811 F. Supp. 2d at 741 (emphasis added).

### (b)   Defendant Improperly Withheld Records that Merely Apply Existing Regulations to Factual Situations

Agencies must disclose communications that merely apply existing regulations to factual situations.  As the D.C. Circuit has explained, information that does not consist of "suggestions or recommendations as to what agency policy should be," but instead contains "straightforward

explanations of agency regulations in specific factual situations" *cannot* be withheld by an agency. *Coastal States*, 617 F.2d at 868. Such information is neither predecisional nor deliberative. *Id.*

Defendant improperly withheld several records that merely apply existing regulations to factual situations. *See, e.g.*, Def. Ex. E at 8-10, 13, 26-27, 43-52 (PDFs 688-96, 697, 698-708, 731, 817-19, 821-29, 1582-98). For example, the *Vaughn* index entries referencing a "FAQ" evidence classic examples of information that an agency must disclose. FAQs do not include "suggestions or recommendations as to what agency policy should be"; they explain existing regulations in specific situations. Similarly, PDFs 1582-98 in the *Vaughn* index all involve how Defendant applies "regulations in specific factual situations," and therefore must be disclosed. *See Coastal States*, 617 F.2d at 868.

Because Defendant has failed to satisfy the necessary elements of the deliberative-process privilege, this Court should deny summary judgment and compel disclosure of the documents not appropriately withheld pursuant to the deliberative-process privilege or another validly asserted FOIA exemption.

### B. Defendant Improperly Withheld Information Under FOIA Exemption 7(E)

Exemption 7(E) allows a federal agency to withhold law enforcement records "*but only to the extent* that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E) (emphasis added).

Defendant withheld several pages of its Consolidated Handbook of Adjudications Procedures ("CHAP") detailing referral and fraud indicators that adjudicators look for when

considering an SIJ petition, claiming that disclosure of these documents "would reveal methods and techniques for enforcing immigration and national security laws and directives."  Def. Br. at 15.  Defendant's *Vaughn* index similarly describes these documents as revealing "techniques," "procedures," and "methods."  Def. Ex. E at 3 (PDF 295-96).

To properly fall within Exemption 7(E), a record must disclose "techniques and procedures" or "guidelines."  *See* 5 U.S.C. § 552(b)(7)(E); *ACLU v. United States Dep't of Homeland Sec.*, 973 F. Supp. 2d 306, 318-19 (S.D.N.Y. 2013).  Defendant has claimed that the withheld portions of the CHAP constitute "techniques and procedures" but has not claimed that the withheld portions constitute "guidelines."  *See* Def. Br. at 15 (referring to the withheld material as "methods and techniques"); Def. Ex. E at 3 (PDF 295-96) (referring to the withheld material as "techniques," "procedures," and "methods").  Therefore, Defendant is only arguing that the withheld documents fall within the first clause of Exemption 7(E) involving "techniques and procedures," rather than the second involving "guidelines."[3]

The withheld portions of the CHAP do not involve "techniques and procedures" under Exemption 7(E).  "The phrase 'techniques and procedures' . . . refers to how law enforcement officials go about investigating a crime."  *ACLU*, 973 F. Supp. 2d at 319 (quoting *Allard K. Lowenstein Int'l Human Rights Project*, 626 F.3d at 682).  But here, Defendant has never claimed that the withheld portions of the CHAP describe how it "go[es] about investigating a crime."  *See id.*  Rather, Defendant's position is that the withheld pages show how it considers SIJ petitions.  *See* Def. Br. at 15 (the CHAP pages show "the types of items Defendant considers

---

[3] Even if the Court determines Defendant has argued that the withheld pages are "guidelines," Defendant failed to satisfy its burden to show that the pages constitute "guidelines." *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Security*, 626 F.3d 678, 682 (2d Cir. 2010) ("[I]n the context of [Exemption 7(E), guidelines] generally refers to resource allocation.").

in evaluating fraud indicators").  As such, these withheld pages do not disclose "techniques and

procedures" within the meaning of Exemption 7(E) and these additional pages should be

disclosed.

> ### C.    If the Court Does Not Order Defendant to Disclose Its Unlawfully Withheld Information, the Court Should at Least Conduct an *In Camera* Review of this Information

Although granting an *in camera* inspection is not automatic, it is "necessary and

appropriate" in some cases.  *Ethyl Corp.*, 25 F.3d at 1249 (quoting *EPA v. Mink*, 410 U.S. 73, 93

(1973), *superseded by statute on other grounds*); *see* 5 U.S.C. § 552(a)(4)(B).  Before

conducting an *in camera* review, "[a]n agency should be given the opportunity . . . to establish to

the satisfaction of the District Court that the documents sought fall clearly beyond the range of

material that would be available to a private party in litigation with the agency."  *Ethyl Corp.*, 25

F.3d at 1249 (quoting *Mink*, 410 U.S. at 93, *superseded by statute on other grounds*).  If the

agency fails to meet its burden in showing that information properly falls under a FOIA

exemption, it is appropriate for a district court to order *in camera* review of that information.

*See Ethyl Corp.*, 25 F.3d at 1250.  In particular, "[i]f [a *Vaughn*] index is so vague as to leave the

district court with an inability to rule, then some other means of review must be undertaken, such

as *in camera* review."  *Id.*; *see also*, *Ayyad v. IRS*, Civil Action No. PX 16-3032, 2018 U.S. Dist.

LEXIS 18143, at *32 (D. Md. Feb. 2, 2018); *Worsham v. United States Dep't of the Treasury*,

Civil Action No. ELH-12-2635, 2013 U.S. Dist. LEXIS 132644, at *47 (D. Md. Sep. 17, 2013).

*In camera* review is appropriate in this case.  As explained in Section III(A), *supra*,

Defendant furnished a *Vaughn* index that is facially inadequate—it does not provide enough of a

basis for the Court to conclude whether Defendant properly invoked FOIA exemptions.

Defendant had the opportunity to explain to the Court—and to CLINIC—why its withholdings

properly fell under FOIA exemptions, but failed to do so.  Accordingly, CLINIC respectfully requests that the Court conduct an *in camera* review of the disputed documents.

## CONCLUSION

In this case, as in all FOIA cases, the "burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not agency records or have not been improperly withheld." *Tax Analysts*, 492 U.S. at 142 n.3 (quotations omitted).  Defendant failed to carry its burden of demonstrating that the disputed records identified in the *Vaughn* index are exempt from disclosure.  Accordingly, CLINIC respectfully requests that the Court deny Defendant's motion for summary judgment and order that the improperly withheld or redacted documents be disclosed.

Dated: February 17, 2020                              Respectfully submitted,


                                              */s/ Michelle S. Grant*
                                              Michelle S. Grant (MN ID #0311170)
                                                  (pro hac vice)
                                              DORSEY & WHITNEY LLP
                                              50 S. Sixth Street, Suite 1500
                                              Minneapolis, MN 55402
                                              Telephone:  (612) 340-5671
                                              Fax: (612) 340-2868
                                              grant.michelle@dorsey.com


                                              */s/ Creighton R. Magid*
                                              Creighton R. Magid #15488
                                              DORSEY & WHITNEY LLP
                                              1401 New York Avenue, NW, Suite 900
                                              Washington, D.C. 20005
                                              Telephone:  (202) 442-3555
                                              Fax:  (202) 442-3199
                                              magid.chip@dorsey.com

                                              *Attorneys for Plaintiff Catholic Legal*
                                              *Immigration Network, Inc.*