IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CATHOLIC LEGAL IMMIGRATION          *
NETWORK, INC.,
                                    *
          Plaintiff,
                                    *          Case No. TJS-19-1511
v.
                                    *
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,               *

          Defendant.
                      *      *      *      *      *      *

**MEMORANDUM OPINION**

Pending before the Court in this Freedom of Information Act ("FOIA") case is the Motion

for Summary Judgment ("Motion") (ECF No. 42) filed by Defendant United States Citizenship

and Immigration Services ("USCIS" or the "Agency"). Having considered the submissions of the

parties (ECF Nos. 42, 43 & 44), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the

reasons set forth below, the Agency's Motion will be granted in part and denied in part.

**I.     BACKGROUND**

Plaintiff Catholic Legal Immigration Network, Inc. is a not-for-profit organization that

"promotes the dignity and protects the rights of immigrants in partnership with a dedicated network

of Catholic and community legal immigration programs." ECF No. 1 ¶ 13. As part of its mission,

Plaintiff "provides training and technical assistance to nonprofit practitioners across the country

to help them effectively represent noncitizens in immigration proceedings." *Id.* ¶ 2.

The Special Immigrant Juvenile Status ("SIJS") classification "provides certain children

who have been subject to state juvenile court proceedings related to parental abuse, neglect,

abandonment, or a similar basis under state law the ability to seek lawful permanent residence in

the United States." *Id.* ¶ 3. The assistance that Plaintiff provides to practitioners includes assistance

about the SIJS classification. *Id.* Plaintiff believes that USCIS has made significant changes to its

practices for adjudicating SIJS petitions since the fall of 2016. *Id.* ¶ 4. To obtain clarification of

the practices that USCIS follows for the adjudication of SIJS petitions and SIJS-based adjustment

applications, Plaintiff submitted a FOIA Request to USCIS. *Id.* ¶ 7. Plaintiff's Request sought the

following documents:

> 1.    A copy of the legal guidance issued by USCIS' Office of Chief Counsel in
> February 2018 regarding the agency's interpretation of the statutory reunification
> requirement for SIJS eligibility;
>
> 2.    A copy of all other USCIS guidance, policies, memoranda, training
> materials, or other directives (including via e-email correspondence) issued from
> December 2008 to the present regarding the adjudication of SIJS petitions in cases
> where the state "juvenile" court predicate order (required in all SIJS cases) is issued
> after the child's 18th birthday;
>
> 3.    A copy of any document pertaining to research or information about specific
> state laws that USCIS has created or provided to assist adjudicators handling SIJS
> petitions, including but not limited to research or information pertaining to juvenile
> court jurisdiction and authority, issued from December 2008 to the present;
>
> 4.    A copy of all USCIS guidance, polices, memoranda, training materials, or
> other directives (including via e-mail correspondence) issued from December 2008
> to the present regarding the adjudication of SIJS petitions; and
>
> 5.    A copy of all USCIS guidance, policies, memoranda, training materials, or
> other directives (including via e-mail correspondence) issued from December
> 2008 to the present regarding the adjudication of SIJS-based adjustment of status
> applications (including regarding protocols for conducting interviews of SIJS
> petitioners or SIJS-based adjustment of status applicants).

ECF No. 42-2 at 14-15.

USCIS has responded to Plaintiff's FOIA Request. *See* ECF No. 42-1 at 5-6.[1] In support

of its redactions and withholdings, Plaintiff has prepared a *Vaughn* index that "explain[s] each of

---

[1] On June 18, 2019, USCIS informed Plaintiff that it identified 1,409 pages responsive to
the FOIA Request, and that it was releasing 824 pages in full, 453 pages in part, and withholding

the Agency's redactions and withholdings."[2] ECF No. 44 at 1. USCIS argues that the *Vaughn* index and the declarations it submitted in support of its Motion "satisfy its burden of proving that it properly invoked the pertinent FOIA exemptions." *Id.* Plaintiff opposes the Motion. ECF No. 43. Plaintiff argues that the Agency has improperly redacted and withheld documents, and that the evidence it relies on for withholding the documents does not satisfy its burden under FOIA.

## II.   ANALYSIS

### A.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See*

---

132 pages in full. ECF No. 42-1 at 6. On September 23, 2019, USCIS notified Plaintiff that it had reprocessed the previously withheld material because it "learned that certain of the withheld material had been released in non-FOIA federal litigation." *Id.* USCIS informed Plaintiff that it identified 1,658 pages responsive to the FOIA Request (some pages were duplicates), and that it was releasing 1,421 pages in full, 182 pages in part, and withholding 55 pages in full. *Id.* Thereafter, the parties conferred about USCIS's search methodology and USCIS located additional responsive material. On November 26, 2019, USCIS released another 378 pages to Plaintiff, including 364 pages in full and 14 pages with redactions. *Id.* at 7. In early 2020, while USCIS was preparing the Motion, it identified additional documents that could be released. *Id.* It released 36 additional pages to Plaintiff in full. *Id.*; ECF Nos. 42-2 at 8; 44 at 5; 44-3 at 2.

[2] As discussed below, a *Vaughn* index is a list that identifies each document withheld by an agency and "describes each document . . . with sufficiently detailed information to enable a district court to rule whether it falls within an exemption provided by FOIA." *Ethyl Corp. v. U.S. Envtl. Prot. Agency*, 25 F.3d 1241, 1244 n.1 (4th Cir. 1994) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)). All references in this Memorandum Opinion are to the Agency's Amended *Vaughn* Index (ECF No. 44-1 at 2-56). *See Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 367 (4th Cir. 2009) (noting that an agency may revise its *Vaughn* index to correct any identified deficiencies to satisfy its burden for withholding documents under FOIA).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations or denials of its pleading but instead must cite to "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

**B.     FOIA Standard**

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Under FOIA, an agency must "make . . . records promptly available" to the public upon request. 5 U.S.C. § 552(a)(3)(A). However, FOIA contains nine specific exemptions from the general obligation to make records available. 5 U.S.C. § 552(b); *see Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 277 (4th Cir. 2010) ("The Act acknowledges that "public disclosure is not always in the public interest.") (quoting *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982)). An agency may withhold information that falls within one of these exemptions. *Id.* Nevertheless, "FOIA exceptions are to be narrowly construed." *FBI v. Abramson*, 456 U.S. 615, 630 (1982). "The

4

government has the burden of demonstrating that a requested document falls under an exemption, which it can satisfy by describing the withheld material with reasonable specificity and explaining how it falls under one of the enumerated exemptions." *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 729 (4th Cir. 2013) (internal citations and quotation marks omitted).

To determine whether an agency has met its burden to justify a withholding, the Court "may examine the contents of such agency records *in camera* to determine whether such records or any part thereof" may be withheld. 5 U.S.C. § 552(a)(4)(B). A *Vaughn* index "is a surrogate for the production of documents for *in camera* review, designed to enable the district court to rule on a privilege without having to review the document itself." *Ethyl Corp.*, 25 F.3d at 1249. Giving an agency the opportunity to meet its burden with a *Vaughn* index reduces the burden on the reviewing court and allows an agency to protect against "the potential damage that disclosure, even to the district court, might have on the deliberative process of an agency." *Id.* at 1249-50. But a *Vaughn* index is only useful insofar as the agency provides a "detailed justification" for the asserted exemptions. *Id.* at 1250 ("If the index is so vague as to leave the district court with an inability to rule, then some other means of review must be undertaken, such as *in camera* review.").

### C.    The Agency's Burden

To sustain its burden to prove that it properly withheld documents under Exemption 5 and Exemption 7(E), USCIS relies on two declarations and a *Vaughn* Index.[3] *See* ECF No. 42-1 at 9. Both declarations are signed by Jill Eggleston ("Ms. Eggleston"), the Associate Center Director of USCIS's Freedom of Information and Privacy Act Unit. ECF Nos. 42-2 & 44-2. Ms. Eggleston's initial Declaration (ECF No. 42-2) explains her role as the FOIA Officer for USCIS, the procedure

---

[3] The adequacy of the Agency's search for documents is not at issue in the Motion. ECF No. 42-1 at 3, 11. Neither is the Agency's withholding of documents under Exemption 6. *Id.*

that USCIS follows to process FOIA requests, the manner in which USCIS processed the Plaintiff's FOIA Request in this case, and a description of each FOIA exemption that USCIS claims allows it to withhold documents in connection with Plaintiff's FOIA Request (with reference to the original *Vaughn* Index, which was subsequently amended). Ms. Eggleston's Supplemental Declaration (ECF No. 44-2) describes additional documents that were released to Plaintiff during the briefing of the Motion, and incorporates the amended *Vaughn* Index (ECF No. 44-1).

The *Vaughn* Index incorporated into Ms. Eggleston's declarations describes the documents withheld according to the following headings: "PDF Number, Description of Document, Withholding full/partial, Exemption(s) Applied, Description of Withheld Information and Explanation(s) for Withholding." ECF No. 44-1 at 2. USCIS withheld records under a number of exemptions, but only two are at issue in the Motion: Exemption 5 and Exemption 7(E). ECF No. 42-1 at 11.

Plaintiff argues that the Agency's "*Vaughn* index is facially inadequate" because it does not describe the withheld information with "reasonable specificity." ECF No. 43 at 9. Specifically, Plaintiff faults the Agency's *Vaughn* Index for failing "to include the authors, recipients, and dates for several documents, and because it is replete with vague descriptions of the withheld or redacted information." *Id.* The Court will address Plaintiff's general concerns about the inadequacy of the Agency's *Vaughn* Index in connection with Plaintiff's specific objections to the Agency's withholdings under the two exemptions at issue.

### 1.    Exemption 5

Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the

agency . . . ." 5 U.S.C. § 552(b)(5). "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). "Among the privileges Exemption 5 encompasses are the attorney-client privilege, the attorney-work product privilege, and the deliberative process privilege." *Rein*, 553 F.3d at 371. The agency bears the burden to establish that Exemption 5 applies. *Id.*

The Agency withheld documents under Exemption 5 on the basis of the attorney-client privilege, the attorney work product doctrine, and the deliberative process privilege.

### a.      Attorney-Client Privilege

"The attorney-client privilege is designed to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Rein*, 553 F.3d at 375 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege "extends to all situations in which an attorney's counsel is sought on a legal matter." *Id.* (citation omitted). It "protects not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* (internal quotation marks and citation omitted). "[I]f a party demonstrates that attorney-client privilege applies, the privilege affords all communications between attorney and client absolute and complete protection from disclosure." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 291 (4th Cir. 2004) (quoting *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997)). In the context of administrative agencies, "[a]n agency can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege." *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980)).

As the proponent of the privilege, USCIS bears to the burden to show that an attorney-client relationship existed between the parties to the communication, that the communication is privileged, and that the privilege has not been waived. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

A party asserting the privilege must demonstrate:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997) (citations omitted); *see also In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 339 n.3 (4th Cir. 2005).

Plaintiff argues that each of the Agency's withholdings pursuant to the attorney-client privilege are improper. ECF No. 43 at 12-14. First, Plaintiff argues, "[t]o the extent that [the withheld] communications reflect specific inquiries from third parties subject to those specific SIJ petitions, no confidential information *concerning the agency* is implicated and attorney-client privilege does not apply." *Id.* at 14.

The Agency directly addresses Plaintiff's objection on this point:

[I]n the Amended *Vaughn* Index, Defendant clarifies that, for each of [the] withheld documents containing "confidential information provided to and from the [Office of Chief Counsel]," those documents contain "confidential information provided internally to and from the [Office of Chief Counsel] (and not to or from a third party)."

ECF No. 44 at 8. Because the Agency has confirmed that none of the withheld communications "reflect specific inquiries from third parties . . . [where] no confidential information *concerning the agency* is implicated," ECF No. 43 at 14, Plaintiff's argument is without merit.

Plaintiff's second argument is that if any of the withheld documents "provide neutral, objective analyses of agency regulations or guidance," rather than "counsel[ing] in a manner intended to assist the agency in protecting its interests," they are not privileged. *Id.* Such documents would "resemble . . question and answer guidelines which might be found in an agency manual." *Id.* (quoting *Coastal States*, 617 F.2d at 863). The Agency states that Plaintiff's argument "may be correct in a vacuum," but it has no application here. ECF No. 44 at 8. The Agency confirms that it "produced the final FAQs . . . but withheld documents containing communications regarding the creation of the FAQ and draft versions of the FAQs." *Id.* So while "the final FAQs may, in Plaintiff's words, 'provide neutral, objective analyses of agency regulations or guidance,' communications involving their creation and the draft FAQs do not." *Id.* at 9. The Court has reviewed the *Vaughn* Index and is satisfied that each of the withheld documents contain communications "intended to assist the agency in protecting its interests." Accordingly, Plaintiff's second argument on the issue of attorney-client privilege is without merit.

The Court has reviewed the Agency's *Vaughn* Index, which describes the 37 documents withheld on the basis of the attorney-client privilege. Ms. Eggleston's Declaration explains how the Agency invoked the attorney-client privilege:

> 31. The attorney-client privilege was invoked to protect confidential information shared between an attorney and his or her client relating to the legal matter on which the client seeks advice. In this instance, the privilege was invoked to protect certain emails and other documents to and from agency counsel and clients, including agency policy makers, agency decision makers, and agency employees implementing SIJS policy. In many cases it included the information divulged to the attorney by the client seeking legal advice and communication between agency counsel about the confidential information concerning SIJS matters provided by the client. Each instance in which the attorney-client privilege was invoked is described in greater detail in the attached *Vaughn* index attached as Exhibit E.

> 32. Even though documents in which the attorney-client privilege is applied may be withheld in full pursuant to the FOIA, USCIS segregated and made a

discretionary release of all non-attorney-client privilege material on many of the
pages in which the attorney work product privilege was invoked.

ECF No. 42-2 at 9.

Having reviewed the Agency's *Vaughn* Index, and having considered Ms. Eggleston's
Declaration and the arguments of counsel, the Court is satisfied that the Agency properly asserted
the attorney-client privilege under Exemption 5. Contrary to Plaintiff's argument, the information
contained in the *Vaughn* Index is adequate for the Court to determine that the Agency properly
asserted the attorney-client privilege. Although the Agency's descriptions of the withheld
documents do not identify the parties to the communications by name, the descriptions reference
in each instance that the communication concerned the provision of legal advice from the Agency's
Office of Chief Counsel to a person employed by the Agency. This is sufficient for the Court to
find that each withheld communication was between a client and an attorney for the Agency, and
that the purpose of each communication was for the client to seek or for the attorney to provide
legal advice.[4]

In addition, the Agency's *Vaughn* Index contains a "detailed justification" for each of the
documents withheld. *See Rein*, 553 F.3d at 368. Contrary to Plaintiff's argument, each entry on
the Agency's Index does more than articulate the privilege "in general terms, using FOIA language
. . . with a general description of the document." ECF No. 43 at 11 (quoting *Rein*, 553 F.3d at 368).
The Agency's description of each document not only describes the type of document withheld but
also describes the legal advice (or request for legal advice) contained in the document and the issue
to which the advice relates. The Agency's *Vaughn* Index is adequate. The Agency has met its
burden to demonstrate that it properly withheld the communications on the basis of the attorney-

---

[4] There is no suggestion that the crime-fraud exception applies or that the Agency has
waived the privilege for any of the communications at issue.

client privilege. Because the Agency's *Vaughn* Index is sufficient, an *in camera* review is

unnecessary. *See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006)

(explaining that a *Vaughn* index is sufficient for determining privilege if it "provide[s] a relatively

detailed justification, specifically identif[ies] the reasons why a particular exemption is relevant

and correlat[es] those claims with the particular part of a withheld document to which they apply")

(quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

### b.     Work Product Doctrine

The work product doctrine is meant to "protect the effectiveness of a lawyer's trial

preparations by immunizing such materials from discovery." *Handgards, Inc. v. Johnson &*

*Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976) (citing *Hickman v. Taylor*, 329 U.S. 495, 67

(1947)). It is partially codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure:

> Ordinarily, a party may not discover documents and tangible things that are
> prepared in anticipation of litigation or for trial by or for another party or its
> representative (including the other party's attorney, consultant, surety, indemnitor,
> insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered
> if:
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>> (ii) the party shows that it has substantial need for the materials to prepare
>> its case and cannot, without undue hardship, obtain their substantial
>> equivalent by other means.

Fed. R. Civ. P. 26(b)(3).

"For a document to be created 'in anticipation of litigation' it must be prepared *because of*

the prospect of litigation when the preparer faces an actual claim following an actual event or series

of events that reasonably could result in litigation." *Neuberger Berman Real Estate Income Fund,*

*Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 418 (D. Md. 2005) (quoting *National Union Fire*

*Ins. Co. v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir. 1992)). The party seeking

protection under the work product doctrine has the burden to show that it applies. *Sandberg v. Va.*

*Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992).

Plaintiff argues that the Agency has not demonstrated that the work product doctrine applies to the documents it withheld on that basis. ECF No. 43 at 15-16. Plaintiff accuses the Agency of "mak[ing] no more than bare assertions" that the withheld documents are work product. *Id.* at 15. It states that the Agency's descriptions fail to address whether the withheld documents "may have been prepared for non-litigation purposes," in which case they would not be protected. *Id.*

The Agency withheld two documents on the basis of the work product doctrine. *See* ECF No. 44-1. Ms. Eggleston's Declaration explains how the Agency asserted the work product protection:

> 29. The attorney-work product privilege was invoked to protect materials prepared by or for an attorney in preparation for litigation. The privilege was applied to documents concerning ongoing or potential litigation concerning SIJS matters. Each instance in which the attorney-work product privilege was invoked is described in greater detail in the attached *Vaughn* index attached as Exhibit E.
>
> 30. Even though documents in which the attorney-work product privilege is applied may be withheld in full pursuant to the FOIA, USCIS segregated and made a discretionary release of all non-attorney work product on many of the pages in which the attorney-work product privilege was invoked.

ECF No. 42-2 at 9.

The Court has reviewed the *Vaughn* Index entries for the two documents withheld as protected work product. The Court is satisfied that each of the documents withheld were prepared in anticipation of litigation and were properly withheld by the Agency. The Agency's descriptions of the documents as containing communications from an Office of Chief Counsel ("OCC") attorney "in anticipation of litigation matters before USCIS in SIJ cases" and "contain[ing] communications from OCC in anticipation of litigation matters before USCIS in SIJ case that were

in issue at that time" are adequate. ECF No. 44-1 at 43, 54. The Agency properly withheld these documents as protected work product. The Court declines to conduct an *in camera* review of the documents. *See Judicial Watch, Inc. v. Food & Drug Admin*, 449 F.3d at 146.

### c.    Deliberative Process Privilege

The deliberative process privilege "is designed to protect the quality of administrative decisionmaking by ensuring that it is not done 'in a fishbowl.'" *City of Virginia Beach, Va. v. U.S. Dept. of Commerce*, 995 F.2d 1247 (4th Cir. 1993) (quoting *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87 (1973)). The privilege "encourages free-ranging discussion of alternatives; prevents public confusion that might result from the premature release of such nonbinding deliberations; and insulates against the chilling effect likely were officials to be judged not on the basis of their final decisions but for matters they considered before making up their minds." *Id.* (internal quotation marks omitted). It is thought that the privilege helps to ensure that a decisionmaker receives "the unimpeded *advice* of his associates." *Florida House of Representatives v. U.S. Dep't of Commerce*, 961 F.2d 941, 947 (11th Cir. 1992) (emphasis in original) (citing *Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340 (1979)). It does so by providing "assur[ance] that subordinates within an agency will feel free to provide the decisionmakers with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

"To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*." *Ethyl Corp.*, 25 F.3d at 1248 (emphasis in original) (quoting *Petroleum Info. Corp. v. United States Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992)). To qualify for withholding under the deliberative process privilege, a document

must be both "predecisional" and "deliberative." *Petroleum Info. Corp.*, 976 F.2d at 1434. A document is predecisional if it was "'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Id.* (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)); *see also Coastal States*, 617 F.2d at 862 (explaining that a document is "predecisional" if it is "generated before the adoption of an agency policy"). A document is "deliberative" if it "reflects the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *Id.* Deliberative material reveals "the manner in which the agency evaluates possible alternative policies or outcomes." *City of Virginia Beach*, 995 F.2d at 1253; *see also Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 329 (4th Cir. 2016).

In determining whether a document is protected by the deliberative process privilege, courts consider whether the disclosure of that document would be likely to undermine the purposes of the privilege. *Coastal States*, 617 F.2d at 866. Where the contents of a document are "so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency," the document is likely to be privileged. *Id.* "Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *Id.* (quoting *United States v. Nixon*, 418 U.S. 683, 705 (1974)). Conversely, "[c]ourts have typically required disclosure of purely factual material, presumably because the prospect of disclosure is less likely to make an advisor omit or fudge raw facts, while it is quite likely to have such an effect on materials reflecting deliberative or policy-making processes." *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (internal citations and quotation marks omitted). There are other characteristics that tend to be held by privileged documents. Documents that provide

14

recommendations or alternative suggestions, or which "weigh[] the pros and cons of agency adoption of one viewpoint or another" are likely to be privileged. *Id.* But if the suggestion contained in a document "is adopted, formally or informally, as the agency position on an issue," or if it is "used by the agency in its dealings with the public," the document may lose its privileged status. *Id.*

The Agency withheld 58 documents on the basis of the deliberative process privilege. *See* ECF No. 44-1. Ms. Eggleston's Declaration explains how the Agency invoked the deliberative process privilege:

> The deliberative process privilege was invoked to protect USCIS's decision making processes. The privilege was applied to documents reflecting recommendations and deliberations comprising part of various processes by which USCIS decisions and policies pertaining to SIJS were formulated. Records were found to be pre-decisional following a review and determination that they preceded an agency decision and were prepared in order to assist DHS in arriving at its decision. Records were also found to be deliberative following a review and determination that they comprised a part of the process by which DHS decisions are made.

ECF No. 42-2 ¶ 27.

Ms. Eggleston's Declaration refers to the *Vaughn* Index, where "[e]ach deliberative process is described in greater detail." *Id.* ¶ 28. She confirms that "[o]nly pre-decisional and deliberative material was withheld and all other information was segregated and released," and that none of the withheld material was created 25 years or more before Plaintiff's FOIA Request. *Id.*; *see* 5 U.S.C. § 552(b)(5) ("[T]he deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested."). The Agency argues that it has properly withheld the documents on the basis of the deliberative process privilege under Exemption 5. ECF No. 42-1 at 13. It notes that the *Vaughn* Index (1) establishes that each document was predecisional and (2) describes "what deliberative process was involved, the role the documents at issued played in the process, and the decision-making authority of the Agency

component at issue." *Id.* Plaintiff argues that the Agency improperly withheld documents that are neither predecisional nor deliberative. ECF No. 43 at 16-19.

First, Plaintiff argues that the Agency improperly withheld a number of documents related to a "communication plan" detailing how the Agency would explain SIJ policy to the public. *Id.* at 17. Because such documents necessarily concern a policy that has already been established, Plaintiffs argue that they cannot be possibly be considered predecisional. *Id.* The Court rejects this argument. "Predecisional documents include those 'generated as part of a continuous process of agency decision making, viz., how to respond to on-going inquiries." *Am. Ctr. for Law and Justice v. U.S. Dep't of Justice*, 334 F. Supp. 3d 13, 21 (D.D.C. 2018) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010)). Documents created in anticipation of press inquiries may be withheld under the deliberative process privilege so long as they (1) were "drafted before and in preparation for communications with the press and public" as "a critical aspect of the decision making process," and (2) "reflect the drafters' opinions and analyses on specific topics and focus on how to best" address those topics from the drafters' perspective. *Am. Ctr. for Law and Justice*, 334 F. Supp. 3d at 21.

An examination of the entries on the *Vaughn* Index for the challenged documents indicates that they were properly withheld under the deliberative process privilege. The Agency describes the withheld documents as follows:

> This information concerns pre-decisional deliberations about the creation of a communication plan by [Field Office Directorate ("FOD")] to be provided to Public Affairs concerning SIJs. The deliberative material was sent by FOD employees to FOD management on its creation of the plan to communicate with the public on the SIJ issue. The foreseeable harm in releasing this information is that it would chill the USCIS in making recommendations as to deciding how to clearly communicate policy decisions to its employees, and would confuse the public by releasing non-final recommendations on such policy. Additionally, the release of non-final recommendations would harm the Agency's overall process in communicating future policies and procedures.

16

ECF No. 44-1 at 16; *see also id.* at 17-20.[5]

The Agency's explanation for its withholding of these documents is sufficient for the Court to find that the documents are both predecisional and deliberative. The documents contain the nonfinal recommendations of junior staff to senior management about how policy decisions should be communicated to the public.

Plaintiff's second argument concerns documents involving a list of frequently asked questions ("FAQ"). ECF No. 43 at 17-18. Plaintiff argues that if the target audience for the FAQ is the public, withholding them is improper because "FAQ-like documents aimed at the public tend to present an agency's established policy, so they may not fall under the deliberative process privilege, or at least should be subject to *in camera* review." *Id.* This is because "documents intended to explain policy to the public, 'including in draft form, are at the heart of what should be released under FOIA.'" *Id.* at 18 (quoting *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 741 (S.D.N.Y. 2011), amended on reconsideration (Aug. 8, 2011)). The Agency states in its reply brief and Amended *Vaughn* Index that the "target audience for the FAQ was internal USCIS employees, and not the public." ECF No. 44 at 10 n.6. Because the Agency has clarified that the target audience for the FAQ is an internal one, and not the public, the Court must reject Plaintiff's argument on this point.

Plaintiff also addressed the possibility that the FAQ was directed toward an internal audience:

> If the FAQ is for agency employees, it would constitute the agency's "working law," and thus must be disclosed. *Sears, Roebuck & Co.*, 421 U.S. at 153. Working law "in practice represent[s] interpretations of established policy on which the

---

[5] The entries for these documents on the *Vaughn* Index also indicate whether non-privileged information was segregated and released. Plaintiff does not address whether the Agency has improperly withheld any reasonably segregable portion of the documents.

agency relies in discharging its regulatory responsibilities." *Coastal States*, 617 F.2d at 869. FOIA requires agencies to disclose working law because agencies are not "permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" *Id.* at 867. Agency FAQs would logically seem to include "interpretations of established policy," but Defendant's *Vaughn* index descriptions referencing the FAQ give no indication of the sort of information Defendant actually withheld, so the Court must order Defendant to disclose this information or at least conduct an *in camera* review. Therefore, Defendant must produce these records, *even if they are "in draft form,"* or the Court should at least conduct an *in camera* inspection. *See Nat'l Day Laborer Organizing Network*, 811 F. Supp. 2d at 741 (emphasis added).

ECF No. 43 at 18.

The Agency concedes that, had it "withheld the [final version of the FAQ], Plaintiff might have a point." ECF No. 44 at 11. The Agency counters, however, that it produced the final FAQ. *Id.*; *see also* ECF No. 44-1 at 33 (stating that the final "SIJ-FAQ developed for internal USCIS employees" was released in full to Plaintiff). The only documents it withheld related to the FAQ are predecisional, not the Agency's "working law" or its interpretation of established policy. *Id.*

The Court finds that the Agency has properly asserted the deliberative process privilege for the FAQ documents. The documents concern the recommendations of the Agency's staff to the FOD regarding the creation of a FAQ for internal use. The documents do not contain the Agency's "working law," but instead consist of predecisional deliberations. Plaintiff's argument on this point is without merit. The Court upholds the Agency's assertion of the deliberative process privilege for the challenged FAQ documents. The Court declines to conduct an *in camera* review of the Agency's withheld documents because the *Vaughn* Index is sufficient for the Court to determine that the privilege has been properly asserted. *See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d at 146.

Plaintiff's third argument concerns documents "that merely apply existing regulations to factual situations." ECF No. 43 at 19. Although the Agency's *Vaughn* Index describes each of the

withheld documents identified by Plaintiff, the Agency did not address this argument in its reply brief. The Court has already concluded that the Agency properly withheld the draft FAQ documents, and the Court need not revisit those documents in connection with this argument. However, some of the documents that Plaintiff identifies (PDFs 1582-98) are not draft FAQ documents. The Agency's description of these documents is confusing. *See* ECF No. 44-1 at 44-53.

Because the Agency has not provided any context for these documents in its reply brief, and because the *Vaughn* Index is not sufficient on its own for the Court to find that the documents are protected by the deliberative process privilege, the Court will deny the Agency's Motion as to PDFs 1582-98. The Court will direct the Agency to produce these documents to the Court for *in camera* review, along with an amended *Vaughn* Index for these documents that better explains why they are protected by the deliberative process privilege. *See Ethyl Corp.*, 25 F.3d at 1250 ("If the index is so vague as to leave the district court with an inability to rule, then some other means of review must be undertaken, such as in camera review."). The Agency is also invited to submit a statement of its position on whether, in light of the Court's finding that the documents are protected by the attorney-client privilege, the documents are exempt from disclosure even if they are not protected by the deliberative process privilege.[6] A schedule for the Agency's submissions and any response by Plaintiff will be established in the Order accompanying this opinion.

### 2.     Exemption 7(E)

Exemption 7(E) permits an agency to withhold "records or information compiled for law enforcement purposes . . . [that] would disclose techniques and procedures for law enforcement

---

[6] Of course, the Agency might also consider whether the needs of the public and the interests of the Agency in preserving its own resources would be better served by releasing these documents to Plaintiff. The Court takes no position on this issue.

investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Law enforcement purposes" includes enforcement pursuant to both civil and criminal statutes. *Gluckman v. U.S. Dep't of Labor*, No. 3:13-CV-169, 2013 WL 6184957, at *6 (E.D. Va. Nov. 26, 2013). "FOIA makes no distinction between agencies whose principal function is criminal law enforcement and agencies with both law enforcement and administrative functions." *Tax Analysts v. I.R.S.*, 294 F.3d 71, 77 (D.C. Cir. 2002).

To establish that this exemption applies, an agency must make two showings. *Grey v. Cuccinelli*, No. 9:18-CV-01764-DCN, 2020 WL 3104744, at *7 (D.S.C. June 11, 2020). "First, the agency must demonstrate that the record was 'compiled for law enforcement purposes.'" *Allnutt v. U.S. Dep't of Justice*, 99 F. Supp. 2d 673, 679 (D. Md. 2000), *aff'd sub nom. Allnut v. Handler*, 8 F. App'x 225 (4th Cir. 2001) (quoting *Abramson*, 456 U.S. at 622). Second, the agency must show that release of the records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

The Agency withheld one document under Exemption 7(E). *See* ECF No. 44-1 at 4. Ms. Eggleston's Declaration explains how the Agency invoked this exemption:

33. Exemption 7 establishes a threshold requirement, which must be met in order for certain information in the records subject to this litigation to be withheld on the basis of subpart (b)(7)(E). Specifically, the redactions at issue must be contained within a record compiled for a law enforcement purpose.

34. The information for which FOIA Exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act ("INA"), codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. *See* 8 U.S.C. § 1103. USCIS has responsibility to enforce federal immigration law pursuant to the INA through its adjudications of applications and petitions submitted to USCIS by individuals seeking immigration benefits from the United States government. Thus, these records were compiled for law enforcement purposes.

35. Exemption 7(E) protects law enforcement information which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law. *See* 5 U.S.C. § 552(b)(7)(E).

36. Exemption (b)(7)(E) was applied to withhold a portion of these pages which discuss sensitive law enforcement techniques and methods in evaluating fraud in SIJS cases. This information reveals the types of items looked at in evaluating fraud indicators, which are procedures and methods involved in the enforcement of immigration and national security laws and directives. The disclosure of this information would reveal methods and techniques for the enforcement of immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law. This expectation of circumvention of the law is why there is a foreseeable harm in this information and why it is appropriately exempt pursuant to Exemption (b)(7)(E). This invocation of Exemption 7(E) is described in greater detail in the attached *Vaughn* index attached as Exhibit E.

ECF No. 42-2 at 9-10.

The document that the Agency withheld consists of two pages from the Agency's "Consolidated Handbook of Adjudications Procedures" in which "sensitive law enforcement techniques and methods in evaluating fraud in Special Immigration Juvenile cases" are addressed. ECF No. 44-1 at 4. The *Vaughn* Index explains that the document "reveals the types of items looked at in evaluating fraud indicators, which are procedures and methods involved in the

enforcement of immigration and national security laws and directives." *Id.* The Agency states that disclosure of this information "would reveal methods and techniques for the enforcement of immigration and national security laws and directives, and could reasonably be expected to risk circumvention of law." *Id.*

Plaintiff argues while the Agency describes the document as containing "techniques and procedures," such information is only protected from disclosure under Exemption 7(E) if it concerns "how law enforcement officials go about investigating a crime." ECF No. 43 at 20. Plaintiff asserts that the Agency has not claimed that the document describes how it goes about investigating a crime.[7] *Id.* Accordingly, Plaintiff argues that the document was improperly withheld.

The Court finds that the Agency properly withheld the document under Exemption 7(E). First, the Agency has demonstrated that the record was "compiled for law enforcement purposes." *See Abramson*, 456 U.S. at 622.  The document contains the "types of items" that the Agency may

---

[7] Plaintiff's argument that the Agency cannot withhold the document based on a risk of circumvention of the law because the document does not involve "guidelines" is based on Second Circuit law. *Id.* at 20-21. This Court will follow the approach of the D.C. Circuit, which has held that the "risk of circumvention of the law" requirement of Exemption 7(E) applies regardless of whether the withheld document contains techniques and procedures or guidelines. *See Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018) (explaining that the D.C. Circuit "has applied the 'risk circumvention of the law' requirement both to records containing guidelines and to records containing techniques and procedures," and that "given the low bar posed by the 'risk circumvention of the law' requirement, it is not clear that the difference matters much in practice") (quoting *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014) ("This Court has applied the "risk circumvention of the law" requirement both to records containing guidelines and to records containing techniques and procedures.")). The Court finds that the D.C. Circuit's interpretation of Exemption 7(E) is well reasoned. Other district courts within the Fourth Circuit have also followed the D.C. Circuit's interpretation of Exemption 7(E). *See Williams v. ATF*, No. PWG-15-1969, 2017 WL 3978580, at *8 (D. Md. Sept. 8, 2017) (citing *Blackwell v. FBI*, 646 F.3d at 42); *Gluckman*, 2013 WL 6184957, at *5 (E.D. Va. Nov. 26, 2013) (same).

be useful to evaluate "fraud indicators" in connection with the Agency's "enforcement of immigration and national security laws and directives." ECF No. 44-1 at 4. Second, the Agency has shown that the release of the document "might create a risk of circumvention of the law." *See Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 79 (D.D.C. 2012) (finding that disclosure of fraud indicators "reasonably could lead to circumvention of laws or regulations," as they could "provide a 'roadmap' or 'guidance' to those looking to circumvent the law, which would thwart future law enforcement efforts"); *Techserve All. v. Napolitano*, 803 F. Supp. 2d 16, 29 (D.D.C. 2011) (holding that disclosure of withheld documents "would reveal the selection criteria, fraud indicators, and investigative process that USCIS and other agencies use in fraud investigations," which "would potentially enable the circumvention of law and could create national and homeland security problems"). Because release of the document would disclose how the Agency considers fraud indicators, creating a risk of circumvention of the law, the Court finds that the document was properly withheld under Exemption 7(E).

## III.    CONCLUSION

For the reasons stated in this opinion, the Motion for Summary Judgment (ECF No. 42) filed by Defendant United States Citizenship and Immigration Services is **GRANTED IN PART** and **DENIED IN PART**. The Motion is denied with respect to the Agency's withholding of PDFs 1582-98. The Motion is granted in all other respects.

The Order accompanying this opinion will establish a briefing schedule to determine whether the Agency has properly withheld PDFs 1582-98.

September 25, 2020                                            /s/
Date                                                    Timothy J. Sullivan
                                                        United States Magistrate Judge